UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Docket No. 20 Cr. 363 (PKC)

-v.-

JUDON McBRIDE,
Defendant.

DEFENDANT'S SENTENCING MEMORANDUM

Introduction

The defendant, JUDON McBRIDE, respectfully submits this Memorandum in aid of his plea for leniency at sentencing at the hearing to be held on March 22, 2022 before the Honorable Kevin P. Castel.

Counsel for the defendant notes that he was assigned after the trial in this case, and after the Probation Department conducted an interview for the preparation of a Pre-Sentence Report. Although counsel has reviewed the trial transcripts of the case and met with the defendant, counsel will not be attempting to dispute any of the facts in the case as stated in the PSR except to note that Mr. McBride pleaded "not guilty" in the case and therefore disputes that he committed

the crime charged. Because of that he cannot and does not "accept responsibility."

Mr. McBride does have some objections to the PSR which will be detailed below. Counsel is not aware of whether these were communicated by prior counsel to the Probation Department, but the final PSR states none had been received as of the time the final report was prepared.

We submit that the maximum sentence of 120 months (as recommended by the Probation Department) is greater than necessary to accomplish the goals of sentencing, and ask the Court to impose a lower sentence in light of those factors.

Objections to the Probation Department Pre-Sentence Report

Offense Level:

1. PSR, page 3, paragraph 4(a)(ii) within "Offense Level":

The defense disputes the allegation that the offense (possession of spent ammunition) was committed in connection with an attempted first-degree murder of "the victim," or that the cross-reference to USSG § 2X1.1(c) is appropriate or correct.

First, the evidence at the trial was limited to the inference that Mr. McBride fired a weapon which ejected the spent shell casings, but the purpose or motive for doing so was not established. I understand that the government apparently made a decision to decline to elicit more facts about this at the trial, so this objection may

require a *Fatico* hearing. (*United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979).

Second, even if there is a fair inference that the weapon was being shot, it was not clear from the evidence that the defendant, as opposed to someone he might have aided and abetted, fired the shot, and thus the responsibility may be diluted by the independent action of another person.

Third, there is no evidence in the trial record to show whether the shots were fired in self-defense or whether they were shot in connection with an offense less serious than attempted murder, such as attempted assault, attempted manslaughter, or menacing (if, for example, there were no intention to hit "the victim").

Prior to attempting to write a memorandum of law counsel would appreciate seeing the government's response: because the undersigned is new to the case may well have missed some prior agreement, understanding, or court order relevant to this issue which would reflect on whether the defense should persist in the objection.

The defense submits that the appropriate base offense level, before adjustments, should te 20 based on USSG § 5K2.1(a)(4)(A).

2. PSR page 6, paragraph 30: The defendant objects to the addition of two points pursuant U.S.S.G. § 2A2.1(b)(1)(B) and 1B1.1 based on serious bodily

injury to a victim. The only crime of conviction is possession of ammunition, which is a victimless crime. Indeed, the PSR itself states at page 6, paragraph 25, that "there is no identifiable victim." We concede that an individual suffered a gunshot wound to the leg at around the time the shots were fired. The government, based on circumstantial evidence, claims were shots fired by Mr. McBride, but it is clear that Mr. McBride was not charged with firing a weapon, or even possessing one, which might have caused that injury (the full level of which is not stated in the PSR) because there was insufficient proof of those facts to even indict Mr. McBride under the low standard of proof needed to add a count to an indictment. More practically, the evidence was not fully clear on who actually fired shots, or whether all the shots fired at that time and place were fired by Mr. McBride, even if one can conclude that the shell casings found on the ground came from a weapon which was in his possession. For those reasons the enhancement of two points should be disallowed and the speculative conclusion that Mr. McBride caused an injury to anyone that night should be disregarded by the Court in deciding on the seriousness of the offense.

Adjusted Offense Level:

If both objections are sustained, the adjusted Offense Level would be 20. If only the first is sustained, the adjusted offense level would be 22. We conceded

that "acceptance of responsibility" points are not to be computed after trial.

Criminal History:

Page 7, Paragraph 39: The reference in the description to facts that appear to be a rape should be stricken and disregarded. The conviction was the result of a trial where the rape charge was either dismissed by the Court or acquitted by the jury, leaving only the burglary charge. This does not affect the number of points to be awarded for this conviction but the description is inflammatory and not supported by the charge of conviction.

Pages 8 – 9, paragraph 45: The description is more inflammatory than the actual facts. Mr. McBride and about 5 other people were in an apartment which was not his. The police found what they found, but there was no evidence that he had any ties to the weapon or the marijuana, and the case was dismissed on the motion of the District Attorney for insufficient evidence. After the case was dismissed he sued the New York Police Department for false arrest.

Other comments on the PSR: In paragraph 56 (at page 10) the report notes that his girlfriend, who remains supportive of him, sometimes had a "rocky" relationship with him because he drank excessively. In the next paragraph, number 57 (page 11) it is reported that in 2012 his five-month old daughter with another girlfriend died of Sudden Infant Death Syndrome. Mr. McBride attributes his

excessive alcohol use during the subsequent years to his grief over that loss.

On page 11, paragraph 60, under Physical Condition, the report notes that Mr. McBride was shot in the hand when he tried to stop a stranger from shooting another person. He adds that he was hospitalized for two weeks and he still suffers an impairment of the fingers in his hand.

Other Objections to the PSR:

The second page of the PSR has "Identifying Data" which incorrectly states that Mr. McBride has "No HS Diploma or GED." First, this is contradicted by the entry on page 12, paragraph 67 which states that he received a GED on August 14, 2007. Second, it is contradicted by **Exhibit A**, the letter from Mr. McBride, in which he states that he received a GED.

Defendant's Sentencing Request

Mr. McBride asks the Court to set a sentence within or below the Guidelines range to be computed based on sustaining his objections to the Offense Level calculations of the PSR. With an offense level of 20 and a Criminal History Category of II the Guidelines range would be 37 to 46 months. If the "victim" enhancement is applied, the offense level would be 22 with a Criminal History Category of II, resulting in a range of 46 to 57 months. A sentence within these ranges would be sufficient, but not more than necessary, to satisfy the

requirements of 18 U.S.C. § 3553(a).

Because Mr. McBride has already served 22 months since his arrest on May 20, 2020, and because of his high Covid risk and the unduly harsh conditions of confinement he suffered during the pandemic (see Exhibit A, letter from Mr. Bride describing the conditions). Mr. McBride has also now been diagnosed has having had Covid-19 in the latter part of December, 2021 (although with minimal symptoms) and has not been given the vaccine. He does have high risk factors if he were to contract the disease again (which appears to be possible, and maybe likely with the breakout of new “variants”). See PSR, paragraphs 60 (his weight) and 62 (hypertension) – risk factors for poor response to Covid-19). Because of these two extraordinary situations over the past two years we ask the Court to fix a sentence of 24 months.

Individual Characteristics of the Defendant

The PSR lists numerous factors which are mitigating to this defendant despite what would otherwise be a serious and dangerous violation of the law. Counsel will only highlight several of them, and otherwise rely on the PSR and on **Exhibit A**, the letter written by Mr. McBride.

From the PSR it appears that Mr. McBride grew up, since the age of eight, in a one-parent family. It appears that his childhood was otherwise stable, and that

he had a good relationship with his mother (who moved away from New York is now suffering from various serious cancer). (PSR paragraphs 50 – 53, and 48). At the age of 14 years, however, Mr. McBride became a "street kid" and fell into the clutches of the woefully inadequate juvenile care system (probably as a "person in need of supervision") over the objections of his mother. (PSR paragraph 53).

Even Mr. McBride's girlfriend, Elana Santos, describes Mr. McBride as being a "typical street guy" which is the obvious result of spending his teenage years until age 18, when he went to prison, without good employment prospects or guidance. (PSR, paragraph 54 and 56.) Although enrolled in several schools and high schools, he either failed to attend classes or, in one case, the school itself was closed for "poor performance." (PSR, paragraphs 67 through 70).

He spent from November, 1993 (when he was eighteen) to July, 2010 (when he was almost 35 years old) in prison. (PSR paragraphs 39 and 40). The PSR does not report that he had any institutional disciplinary problems or problems on parole (until his discharge date of November 14, 2018), and Mr. McBride himself points out that one of his personal signature achievements was receiving his GED degree in 2007 (**Exhibit A**, and PSR paragraph 67).

Mr. McBride is not, however, with resources to have an income-earning life once he is released. He is certified by the Department of Labor in facility cleaning

skills and has experience doing cleaning work others would shun, specifically cleaning hospital and hospice care rooms for chronically ill and terminal patients. (PSR, paragraph 71). As noted in that paragraph, he also has skills in floor covering and restoration work. Between the time of his release from prison and the arrest in his case he managed to hold various jobs related to those skills and other "odd job" kinds of work. Although he does have some skills, he probably could benefit from any additional vocational training he could receive while on supervision. As is usually the case, it is very difficult for people who have served prison sentences on felony convictions to obtain employment, particularly in positions of trust. Nevertheless, his longest-standing employer (2010 to 2017), the CNW Cleaning Service in Brooklyn, would like to have him back. (PSR, paragraph 72).

Counsel notes that once an individual has started the downward cycle involving unemployment, lack of education, and eventual criminality, it can be hard to break the cycle. Counsel submits, however, that Mr. McBride shows he has the makings for leading a law-abiding productive working life in specialize "blue collar" trades (the specialized cleaning work and the flooring work, in particular), and that with supervision his prospects are not insignificant. This is especially true given the sincere intentions Mr. McBride has expressed in his letter to the Court,

**Exhibit A**.

Counsel also notes that the tragic death in 2013 of Mr. McBride's five-month old child had a very debilitating effect on him which, however, can be confronted with psychological treatment. See PSR paragraph 57 and Mr. McBride's letter to the Court, **Exhibit A**. In addition to the effects of the tragedy itself on Mr. McBride, it led to the dissolution of his relationship with his daughter's mother and to the period of excessive drinking described by his current girlfriend in paragraph 56 (... she [Elana Santos] reported that they had a "rocky" relationship and the defendant would drink excessively. ... Santos remains supportive of the defendant,"

<u>Conclusion</u>

For the foregoing reasons the defendant asks the Court to make the readjustment to the Guidelines calculation proposed by the Probation Department, and thus adjusted, impose a sentence within the range of 37 to 57 months (depending on the offense level), and further make a variance from that range to a sentence of 24 months in light of 1) the risks of the pandemic to Mr. McBride because of his health issues, and 2) the unusually harsh conditions of confinement he has suffered during his incarceration in this case during the Covid-19 pandemic.

Dated: New York, New York
March 21, 2022

Respectfully submitted,

*/s/ Thomas H. Nooter*

Thomas H. Nooter
Attorney for Defendant
Freeman, Nooter & Ginsberg
75 Maiden Lane, Suite 503
New York, NY 10038
(212) 608-0808
Email: nooteresq@gmail.com

cc: Office of the United States Attorney (by ECF)
Attention: AUSA Marguerite B. Colson, Esq.